Good morning, Your Honors. My name is Jaime Hoss. May it please the Court, my name is Jaime Hoss, and I represent the petitioner, Ms. Rosada Sola, in this matter. The issues before the Court are exactly those raised when the Court asked the parties to address three key issues. Does Ms. Sola have an avenue for pursuing her derivative asylum and Dakota claims? If she does not, does that deprivation amount to a due process violation? And if there is a due process violation, was it caused by the administrative or can it be correctable by the administrative tribunal? Could you help me, first of all, with the timeline here? I found myself a little bit puzzled because it seemed like her husband had gone through the process and had been denied relief other than on the TPS grounds. He had denied asylum relief and denied NACARA relief before your client was put into removal proceedings. Is that correct? That is correct. Okay, so he had not appealed the NACARA and the asylum determinations. Is it your position, and what would be the procedural mechanism where he could then bring this again? There's no direct appeal for denials of asylum or NACARA applications that are made by an officer. So an immigration officer will make a decision on the applications. They're not technically denied. They're then referred to an immigration judge. As the decisions from the CIS officer indicates, they took no further action on the denial of the asylum application or the NACARA because he had the lawful temporary protective status. Now, on the NACARA application, the agency said under the regulation he's not eligible. Is it your view that he is eligible, that there's some basis for eligibility? That's a very good point. I cannot honestly and candidly appear before this Court and agree or stipulate to a set of facts that haven't gone through the normal process of review. When an individual, an alien, is unrepresented or assisted by an attorney, as I have personally seen and I'm sure the Court has observed many times before, the set of facts are reviewed by the immigration judge, who are then again reviewed by the Board of Immigration Appeals to determine whether substantial evidence supports those set of facts. So for the government counsel to assert a set of facts as declared on an alien's application who's unrepresented at that time, who apparently doesn't speak English or read English at the time on an English application, they simply can't agree to it. So I can say with all honesty to the Court that I agree that he's ineligible for that reason, because of the facts asserted in the application. The record here said that he entered the United States March 10, 1991. And so that's what we are dealt with, with the record. So based on the record, he wouldn't be eligible. With the record as provided by government counsel as to the decision from the immigration officer. I have a mootness question as well about this. In other words, what relief she could get depending on what relief would be available for her husband. So I had a question about that. On asylum, he would have a year to file, is that right? And so does he still have a potential to file for asylum? The year, well, for the asylum, let's address the asylum first. The year doesn't apply to the case because that was a result of a further enactment of law that occurred after he submitted his asylum application in 1995. So the one year bar doesn't apply to this case at all. Any referral from the immigration officer or by ICE to the immigration judge would still be eligible to apply for asylum, certainly. The issue regarding the NACADA, again, are a set of facts that have not been adjudicated or reviewed by an independent fact finder, immigration judge, or reviewed on the appellate level by the Board of Immigration Appeals and are before this court. It's certainly premature to say. Counsel, I'm troubled by the jurisdiction in this case. Has this claim been exhausted before the BIA? The immigration judge certainly was aware of the problems that were faced by Ms. Sola in presenting her derivative asylum applications. Well, the TPS question was raised, was it not? The TPS as well as the problems regarding assertion of her derivative claims for asylum as well as the NACADA. Those were expressly raised before the BIA? No, before the immigration judge, Your Honor. The due process violation, however, that we're asserting is not within the jurisdiction of the BIA or even the immigration judge. The regulations that are in place, which acknowledge her right to derivative assertions of asylum or NACADA. After he's been granted it, though, right? No. So, in other words, the regulation talks about once granted, then the spouse has a derivative claim. She's eligible to apply while his application is pending. So, could she have asked the BIA or the IJ for a continuance so she would have good cause for a continuance while he, her husband raised and adjudicated his other bases of relief? Now, what would have stopped her from doing that? The immigration officers in their decisions made it clear in their decisions that no further action is going to be taken. Right, but you just told us that that was irrelevant, that she would be able to use the adjudicatory process. So, she could have said, my husband's going to go forward with his asylum and NACADA claims, and judge, you should continue my case until his claims have been adjudicated. Could she have done that? No, because they were already adjudicated by the immigration officers. But you just told me that's irrelevant, right? Didn't you just tell me that was irrelevant or am I misunderstanding? Because you said he could now raise both of those claims again. Only if he's referred to an immigration judge. He could do it affirmatively, couldn't he? And that's what he did. Well, could he attempt to just ask for removal and to put himself in removal proceedings? I'm not aware of any regulatory implementation that would allow an individual to go before an ICE officer and say, please refer me to an immigration judge. That doesn't mean it hasn't happened in 1990. He can't do it now? I guess now I'm really puzzled, and maybe I'm just misunderstanding the procedural mechanism. But what I just said is, what are his options now? Or is it moot because his claims for relief have already been denied and nothing further has happened? And you said, no, no, he could still get relief. Well, why couldn't he get relief then? Only if he's referred by the ICE, by the officer. So he can't be. Not independently. Okay, so right now he has no basis for relief because he has no referral. Right. So is it moot because she can't have any relief? So is her claim moot since her husband's relief is not possible right at this moment? Her application for derivative status and protection under the asylum laws as well as NACADA doesn't become moot because his opportunity still exists. It seems like her claim is just premature. Exactly. Why is it even here? Well, it's premature in terms of not being deprived of the opportunity to assert a derivative application for asylum in NACADA. Not in terms of premature in terms of the merits of her claim. So the merits of the claim in terms of But her derivative claim is all tied to his. Yes. The merits of his, and only he can establish his entitlement. But he can only establish it. She can't establish his entitlement to asylum relief or NACADA relief. The way the regulations are at this moment, absolutely. She's unable to do it unless he's in proceedings. Since the government chose not to take any action because he has a temporary protective status, he's unable to assert those claims, she's unable to assert the derivative claims. So there's no relief we could give at this point. That's not necessarily true. Just as the court acknowledged a due process violation in a setting of arriving aliens who are given parole, the court recognized the due process violation and said there is no mechanism in which that individual can apply for adjustment status. This is here. Acknowledge the due process violation in that this individual, Ms. Sola, is unable to assert her derivative claims. Remand the matter and let the agency figure out the regulations to implement. It's not the burden or the job of this court to figure out, well, how is she going to present the claims? The claims exist. It's whether or not she's going to be given that opportunity to apply for them in an immigration judge setting. I say that I've got about a minute left. Can I reserve it for purposes of rebuttal? You may certainly do so. Thank you. Thank you, counsel. We'll hear from the government. Good morning. My name is Jesse Bless. I represent the Attorney General of the United States. I'd like to first discuss the issue that was addressed by the board, which is the temporary protective status as a derivative that it denies to the petitioner. Now, in the notice to appeal and in the brief on appeal to the board, that was the only issue raised and, in fact, was explicitly the only issue presented to the board. If there were some procedural due process claim under this court's precedent, that had to have been exhausted, and that is the claim in essence. But that's only if the BIA could correct it, and that was a question that was asked of the government and the government in a footnote said, we don't need to address that issue. So could the BIA have addressed that constitutional claim? Procedural due process claims, absolutely. How so? It could have said, we recognize this due process violation, and, in fact, could take matters to either stay the proceeding or to a continuance. I think you hit the nail on the head on that. That would have been an appropriate form of relief. There is no substantive vested interest in discretionary relief, such as NACARA or asylum. So to the extent there's a substantive due process claim, which the board does not have jurisdiction to consider and does not have to be exhausted, that doesn't exist here. There is no vested interest in asylum or NACARA, just as in other forms of discretionary relief. That's well established. And so what we're left with is a procedural due process claim, if anything, and to the extent that was at issue, it was not presented to the board and it had to be. So what could the board have done here for her, then, to explain again? I'm not quite sure I understand. And I don't want to put words in the Petitioner's mouth, but there are certain things. I mean, you're telling us that the government could, if they had believed, if they had been persuaded there was a due process violation, that the BIA could have taken some action to correct it. I think the first thing would have been for Petitioner to recognize that the claims were not pending. You know, and this, we just learned about this a month ago. So that would have been number one. These claims have been decided by the council official. My husband had an asylum hearing on the merits. He didn't appeal that. It has been decided. Now I am in removal proceedings. We're in a difficult situation because my husband's been granted TPS and I was referred to removal proceedings. What I suggest is that you stay proceedings until one of two things happen. My husband withdraws from the TPS program or relief, or I become independently eligible for relief and let the immigration, the experts who are in charge of making those decisions, rule on that issue. If the result was not one that Petitioner agreed to, was not granted favorably in her favor, she could have exhausted that issue to the board. If the board said, we agree with the IJ, that could have been an issue for this court. If it agreed with her, it would have remanded the case. But we don't have that. If her husband had withdrawn from the TPS program, then would he have the opportunity to have adjudicated his Nicaraguan asylum claim? How would that have worked? I think, first things first, the majority of applications in this country are handled by the Department of Homeland Security, as it was in this case.  What could have happened is he could have re-pursued the denial of his asylum claim. And to the extent he's claiming any eligibility for Nicara, he could have presented that to the IJ. The record from Citizen and Immigration Services would have been there. I mean, if you read the exhibits, he was interviewed. He presented evidence on the asylum claim. He had a right to appeal. He also had a right to appeal. Did he appear before an immigration judge? No, no, but there's a separate. The majority of applications in this country are done by consular officials at the Department of Homeland Security. You don't have to get asylum before an IJ. So he would have gotten an administrative appeal. There would have been a higher level in the agency that he could have appealed to. And they sent him. That's in the record on, I believe it was August, excuse me, September 17th. They sent him a final notice saying, you know, you have, I think it was 16 days. Okay, so he didn't do any of that. No, he did not. But if he had withdrawn from the TPS program, could he have been put into removal proceedings and then raised the Nicara and the asylum claim, or how would that? He couldn't put himself in there. But I can tell you, and that's a judgment that's within the, to initiate removal proceedings is completely within the discretion of ICE, Immigration and Customs Enforcement. They would have put him by serving him with a notice to appear, just as they did with the petitioner. And at that point before the IJ, there would have been an issue. Is he, in fact, deportable? That's number one. And two, do you have any claims for relief? That hasn't happened yet. It may never happen. So unless some step was taken to put him in removal proceedings by DHS, her options would be to say to the BIA, there's some potential, my husband may have some potential claim which he has not been adjudicated, which the agency has not looked at, and I want an indefinite stay until those potential claims are raised and adjudicated in some manner. Is that correct? Yeah. But I want to be, that is correct. But I want to, you know, if you read the administrative record, the position taken by petitioners is completely consistent with someone who knew that there were no pending claims. And that's why, you know, quite frankly, I was surprised when I found out that these claims, and the petitioner's opening brief on page 11, the heading, pending claims, which is why I'm sure the court issued its orders. I had contacted the petitioner prior to the court's order to explore the pendency of the claims. So there are no pending claims for her husband at this point. No. And in the asylum, as well as the NACARA eligibility, have been decided by experts, counselor officials. They've looked at the merits to his claims and have adjudicated them, not in removal proceedings, but they haven't, you know, they haven't been ignored. They've been decided. They were final. He had rights to appeal on the issues. But wasn't one of them erroneous? They said, well, because you're in TPS, you don't have a right for, I think it was NACARA. The basis of its decision to deny NACARA was because he was in lawful status. They also had issued him a notice telling him that he was not an ABC class member. He was ineligible for benefits. And, in fact, that would have been an alternative basis. Of course, they didn't rely on that basis. But, in effect, the notice, which he had a right to appeal in federal court on the ABC benefits, which he never undertook, that pretty much was the death knell for our application. But isn't there another basis that if he had filed before April 1, 1990? The asylum? The asylum claim? Yeah. Yeah, there's another basis. There was. But we know that he filed. He didn't do so. We know he filed a year later. And, again, if there are – again, these have been explored. They weren't explored in this case. If something happens in the future, I may be here again. Well, I mean, she's faced with a threat of removal, right? If this court were to deny the petition for review? Right. There's – now there's – now. Well, does she have other options? Yes. Assume for the sake of discussion that we were to deny the PFR. Yes. What are her other options? Her options are going to ICE and filing for a stay of removal because of, you know, the unique circumstances of the case. And that's under regulations. It's right there. There's also a method by which she could move for a halt of the removal order itself, more than just a stay in terms of, in fact, administrative closure. We've heard that term. Correct. Yeah. So you're saying that there's – the agency would have the discretion. As it always does. To stay her removal or take some other step. But there's no regulatory – she has no right or any basis for a claim that she can't be removed. Is that your position? I don't know if I want to make it that broad. I think that I would just say that the board's order in this case was not an abuse of discretion. And so the removal order that exists should be upheld. And there's other ways in which she could attempt this. Absolutely. Absolutely. Okay. Thank you. Thank you, Counsel. Mr. Hasso, you have some time. Thank you, Your Honor. Would you mind responding to the suggestion of what your client might do in the event we were, for the sake of discussion, to affirm or to deny the PFR? The respondent actually has taken affirmative steps and initiated contact with the Office of Chief Counsel in Los Angeles. Although it seems to be like settlement negotiations or discussions, because it's a direct question to me, I feel obligated to respond candidly in terms of where it's at. The Office of Chief Counsel indicated to me that it had to be initiated, the request for PD, prosecutorial discretion, had to be initiated by government counsel when it's up the appellate level. Just recently, no error to government counsel, was government counsel informed of this fact. And I've been informed that I am to deal directly with the Office of Chief Counsel, that the Office of Immigration and Litigation is not going to take a position on the PD. And so I'm going to take direct approach with the Office of Chief Counsel in reference to a PD determination. Very well. Thank you. In response to some of the key points raised by government counsel, there is no appeal of a denial of an asylum or NACADA. With all due respect to his assertion that there is some kind of appellate right, there is no appeal at the immigration officer level. It's only simply, is the individual referred to an immigration judge? And at the immigration judge level, he's given the noble review powers of that initial determination by the immigration officer. So there's no appellate procedure for Mr. Soulek to have taken as a result of the non-grant of his asylum and NACADA. Also, there's no mechanism or procedure before the Board of Immigration Appeals to address this specific set of circumstances before this court. There's no authority or discretion by the immigration judge to correct the asserted due process violation that has occurred in this case. If there was, if there was a regulation, if there was a mechanism for her to assert the derivative asylum application claims as well as the derivative NACADA claims, she would have done so. All right. Thank you, counsel. You know, we have a mediation unit within the Ninth Circuit. And, you know, if you confer with your opposition counsel and you think that that service might be of some help here, let us know. I did, Your Honor, unless there's been a change of circumstances. The answer was no, not at this time. But you have those other opportunities to deal with the chief counsel. And I am. Yes, very well. Thank you, counsel. Your time has expired. The case just argued will be submitted for decision.
judges: O'scannlain, Paez, Ikuta